IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CYNTHIA GOSSETT                                                                                   PLAINTIFF
*on behalf of*
A MINOR CHILD, C.G.

vs.                                            Civil No. 1:06-cv-01078

MICHAEL J. ASTRUE[1]                                                                        DEFENDANT
Commissioner, Social Security Administration

### MEMORANDUM OPINION

Cynthia Gossett ("Plaintiff") brings this action on behalf of a minor child, C.G., and pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying C.G.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act.

**1. Background:**

Plaintiff filed an application for SSI on behalf of her daughter, C.G., on February 14, 2004. (Tr. 12, 47-50).[2] In this application, the Plaintiff alleged C.G. was disabled due to attention deficit hyperactivity disorder ("ADHD"), petit mal seizure disorder, and a borderline range of intelligence. (Tr. 12, 51, 55). The application alleged an onset date of September 1, 2003. (Tr. 48-50). This

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

application was initially denied on June 11, 2004 and was denied again on reconsideration on December 13, 2004. (Tr. 27-35, 40-42). The Plaintiff requested an administrative hearing which was held on September 16, 2005 in El Dorado, Arkansas. (Tr. 12, 230-247). Plaintiff and C.G. were present and were represented by counsel, Denver Thornton, at the hearing. (Tr. 230-247). Plaintiff and C.G. testified at the hearing. (Tr. 230-247). At the time of the hearing, C.G. was nine (9) years old and was in the fourth grade at school. (Tr. 233).

On January 26, 2006, the ALJ entered an unfavorable decision and denied Plaintiff's request for disability benefits for C.G. (Tr. 12-21). The ALJ concluded C.G. had never performed Substantial Gainful Activity ("SGA"). (Tr. 20, Finding 2). The ALJ concluded C.G. had a history of ADHD and a petit mal seizure disorder, which are severe impairments, but were not sufficiently severe to medically meet or equal or be functionally equal to the severity of any impairment listed in Part B, Appendix 1, Subpart P, Social Security Regulation No. 4. (Tr. 20, Findings 3-4). The ALJ analyzed C.G.'s subjective complaints and found that those complaints were not credible to the extent she alleged. (Tr. 20, Finding 6). The ALJ concluded that the Plaintiff did not have a "marked" or "extreme" limitation in any of her areas of functioning and that her impairment(s) were not functionally equivalent to a listing. (Tr. 20, Finding 5).

Based upon these findings, the ALJ determined that C.G. was not disabled or entitled to SSI. (Tr. 20, Finding 7). On June 17, 2006, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 4-6). On July 26, 2006, the Plaintiff filed the present appeal. (Doc. No. 1). The case was referred to the undersigned on February 21, 2007. The Plaintiff and the Defendant have both filed appeal briefs. (Doc. Nos. 9-10). This case is ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age

eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed her application in 2004, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"), *See* 20 C.F.R. pt. 404, subpt. P, app. 1. A minor child may be disabled if his or her impairment is functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing. *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning. The six domains are the following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these

4

domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme." *See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

**3. Discussion:**

The Parties do not dispute that C.G. meets the disability requirements under Step 1 (C.G. has not engaged in SGA) and Step 2 (C.G.'s impairment is severe) of the analysis. Instead, the Plaintiff claims the ALJ erred in finding that C.G. was not disabled under Step 3 of the analysis. Specifically, the Plaintiff brings the present appeal claiming the following: (1) C.G. meets the requirements of Neurological Listing 11.03, (2) C.G. has a marked limitation in acquiring and using information, and (3) C.G. has a marked limitation in attending and completing tasks. (Doc. No. 9, Page 3). The Defendant claims the Plaintiff has not met her burden of establishing that C.G. meets Neurological Listing 11.03. (Doc. No. 10, Pages 4-9). The Defendant also claims that, based upon C.G.'s IQ test scores and other evidence in the record, C.G. does not have a marked limitation in her ability to acquire and use information or in her ability to attend and complete tasks. (Doc. No. 10, Pages 4-12). This Court has reviewed the transcript and the relevant briefing in this case and, based upon this review, finds the ALJ's disability determination should be **AFFIRMED**. The Court

will address Plaintiff's arguments in order.

**A. Neurological Listing 11.03**

Plaintiff claims the ALJ erred in finding that C.G. does not meet the requirements of Neurological Listing 11.03. (Doc. No. 9, Pages 7-12). Specifically, the Plaintiff claims the ALJ erred in discounting the two "lay" reports documenting the frequency of C.G.'s seizures, in finding that C.G. had not had a sufficient number of seizures to meet the requirements of this listing, and in finding that C.G.'s seizures were adequately controlled with medication. (Doc. No. 9, Pages 7-12). The Defendant argues that the Plaintiff did not meet her burden of establishing that C.G. met the requirements of this listing, the ALJ properly discounted the "lay" records and other claims of seizure activity because they were not credible and were not substantiated, and the ALJ properly determined the Plaintiff did not meet the requirements of this listing. (Doc. No. 9, Pages 7-12).

Neurological Listing 11.03 sets forth the following requirements:

> Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), *documented by detailed description* of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

(emphasis added). In order to provide records "documented by detailed description," the Plaintiff must provide "at least one detailed description of a typical seizure. . . . [which] includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(A). This detailed observation may be provided by either an individual who is not the claimant or by a professional (such as a doctor).[3] *See*

---

[3] The Defendant claims that, in order to properly document the claimant's seizures "by detailed description," the Plaintiff is required to produce "characteristic EEG patterns plus information as to the age of onset and frequency of clinical seizures. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(b)." (Doc. No. 10, Pages 5-6).

*id.*

In the present action, there are only two lay reports documenting and explaining C.G.'s alleged seizure disorder or her epilepsy.[4] (Tr. 14, 124-125). These two reports are not detailed. (Tr. 14). As noted by the ALJ, these reports do not provide "any dates, any specific number of seizures which they assert they observed, or any material interruption in the claimant's ability to function." (Tr. 14). The first report was written by Mrs. Jackson, a youth director at New Haven Baptist Church and is dated September 14, 2005. (Tr. 124). Mrs. Jackson provided very little information about the nature of C.G.'s seizures. (Tr. 124). In this report, Mrs. Jackson merely stated that she has seen C.G. "have many seizures on many different times at church, at youth outings, and on the church van also" and that C.G. "gets excited when she sings and we know if she gets to *(sic)* excited or upset you can rest a sure *(sic)* . . . [C.G.] will have a seizure." (Tr. 124). Mrs. Jackson stated that she has observed a number of these seizures for over two years. (Tr. 124).

The second report was written by James and Sylvia Cross, C.G.'s godparents, and is dated September 14, 2005. (Tr. 125). This report vaguely describes C.G.'s seizures as follows:

> . . . [C.G.] is real still for a few minutes while having the seizure; and on occasion, she jerks. She cannot speak at the time of the seizures. We gently call her name until she comes out of the seizure. She also have *(sic)* seizures while she is asleep, and [she] wet *(sic)* the bed. When she comes out of her seizures, she is extremely tired and goes to sleep.

(Tr. 125). Clearly, this description and Mrs. Jackson's description are not "detailed" and cannot provide a basis for a determination that C.G. meets the requirements of Neurological Listing 11.03.

---

However, there is no such requirement in the Social Security Regulations ("Regulations") cited by the Defendant. Instead, as noted above, in order to adequately document C.G.'s epilepsy, Plaintiff is only required to provide a detailed description of one of the typical seizures.

[4] Also included in the transcript is a "seizure calendar" dated from February of 2005 through April of 2005. (Tr. 113-115). This calendar provides very little, if any, description of C.G.'s seizures and cannot be considered a "detailed description" of C.G.'s seizures.

7

These descriptions provide almost no description of the seizures experienced by C.G. or of their severity. Furthermore, there are no other records in the transcript that describe C.G.'s seizures. Thus, the ALJ did not err in disregarding these lay opinions and in determining that C.G. did not meet the requirements for the Neurological Listing 11.03.

**B. Marked Limitation in Acquiring and Using Information**

The Plaintiff claims that C.G. has a borderline range of intelligence and that her pace of activity is noticeably slow. (Doc. No. 9, Pages 12-13). The Plaintiff claims that Dr. Spellman's findings support this determination and a determination that C.G. has a marked limitation in her ability to use and to acquire information. The Defendant claims the Plaintiff is "capable of acquiring and using information consistent with the low average range of intelligence, as would be expected given her IQ scores." (Doc. No. 10, Page 9). The Defendant also notes that, based upon the record, C.G. was passing all of her classes with modifications, which indicates she does not have a marked limitation in using and in acquiring information.

A marked limitation is a limitation that is more than moderate. *See* 20 C.F.R. § 416.926a(e). A claimant has a marked limitation when the claimant's impairment interferes "seriously with your [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(I).

In the present action, although C.G. may have some limitation, C.G. does not have a marked limitation in her ability to acquire and use information. Some of C.G.'s school records and other records in the transcript indicate that she is somewhat limited in her intellectual capacity. (Tr. 66, 72-77, 100-101, 166-168, 177-179). However, her standardized test scores from the second grade indicate that she is fairly average in Reading Comprehension and moderately below average in Math (Problem Solving) and in Math (Procedures). (Tr. 89, 126-127). Dr. Spellman, who examined C.G.

at the end of the second grade, found that her pace was "noticeably slow" but that she was not significantly limited in two or more areas of adaptive functioning. (Tr. 155). Her school records from the third grade also indicate that her ability to acquire and to use information had improved since the second grade. (Tr. 120-121). By the third grade, C.G. was passing all of her regular classes with the benefit of her medication and that during that time, her teacher noted that "she writes great and proficient stories and is a good speller." (Tr. 119).

Therefore, based upon this Court's review of the transcript and all of the evidence in this case, the Plaintiff has not established that C.G. suffers from a marked limitation in her ability to acquire and to use information. As noted in this opinion and by the records in the transcript, C.G. may be limited in her ability to acquire and to use information, but the Plaintiff has not established that C.G. has a limitation that interferes "seriously with your [her] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(I).

## C. Marked Limitation in Attending and Completing Tasks

The Plaintiff claims that C.G. suffers from a marked limitation in attending and completing tasks because "her ADHD is not adequately controlled on medication." (Doc. No. 9, Page 15). The Defendant admits that C.G. is limited in her ability to attend and to complete tasks. (Doc. No. 10, Pages 10-12). The Defendant claims, however, that "Plaintiff's concentration deficits and inability to maintain attention were selective and not inherent." *Id.* at 10. The Defendant notes that although C.G. would stare out into space during math, C.G. did not suffer from that problem while she was reading. *See id.* The Defendant notes that, subsequent to March of 2004, C.G. was able to complete testing in at least two formal test settings, which indicates that C.G. is not limited in her ability to attend and complete tasks. *See id.* at 11.

The Plaintiff is correct that C.G. probably suffers from a marked limitation in her ability to

9

attend and to complete tasks. Such a finding is certainly supported by the record. (Tr. 61, 63, 66, 67, 72-77, 89-91, 166-167, 159, 172-173, 181-184). However, even if C.G. did suffer from a marked limitation in her ability to attend and to complete tasks, C.G. would still not be disabled. In order to establish that C.G. is disabled, the Plaintiff is required to prove that C.G. suffers from a marked limitation in at least two domains. *See id.* § 416.926a(a). Assuming this Court accepts the Plaintiff's argument on her third point of error, the Plaintiff has only established that C.G. suffers from a marked limitation in one domain–attending and completing tasks–and has not established that C.G. suffers from a marked limitation in any other domain. There is also no evidence, and the Plaintiff does not claim, that C.G. suffers from an extreme limitation in her ability to attend and complete tasks. Thus, the Plaintiff has not established that C.G. is disabled, and the ALJ did not error in his disability determination.

### 4. Conclusion:

Based on the foregoing, the decision of the ALJ, denying benefits to the Plaintiff on behalf of C.G., is supported by substantial evidence, and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **11th day of June, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge